**UNITED STATES, Appellee,**

v.

**Specialist Four Dwayne L. SCOTT, 224–23–6796, United States Army, Appellant.**

**ACMR 8801199.**

U.S. Army Court of Military Review.

31 Jan. 1989.

For Appellant: Colonel John T. Edwards, JAGC, Captain Scott A. Hancock, JAGC, Captain Jon W. Stentz, JAGC (on brief).

For Appellee: Colonel Norman G. Cooper, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Captain Martin D. Carpenter, JAGC, Captain Karen V. Johnson, JAGC (on brief).

Before HOLDAWAY, THORNOCK and CARMICHAEL, Appellate Military Judges.

## OPINION OF THE COURT

THORNOCK, Senior Judge:

Appellant was convicted by a special court-martial of carnal knowledge with a female under the age of sixteen in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920 (1982) [hereinafter UCMJ]. The members sentenced him to a bad-conduct discharge, confinement for three months, forfeiture of $447.00 pay per month for three months and reduction to grade of Private E–1. The sentence was less than that agreed to in the pretrial agreement and the convening authority approved the sentence as adjudged.

Appellant and the victim both testified that the intercourse was completely consensual and that they were discovered by the victim's mother. Appellant immediately accepted responsibility for his actions and made admissions to investigators. The victim initially denied that intercourse had taken place. She recanted after she became aware of the appellant's admissions.

Appellant presented several witnesses and exhibits as to his soldierly qualities and good character. The defense evidence was strong and consistent with ten witnesses, including supervisors and co-workers, recommending the appellant's retention and testifying as to his excellent rehabilitative potential.

In rebuttal, the prosecution called the appellant's battalion commander, Lieutenant Colonel (LTC) S. Although LTC S was excused from participating in the appellant's case, he normally was the senior member detailed to the panel that heard appellant's case. Over defense objection, LTC S was permitted to testify concerning the appellant's rehabilitative potential. Counsel established that LTC S had no personal knowledge of the appellant's duty performance, but that he had been informed that it was "adequate." After LTC S's testimony was completed, and in an Article 39(a), UCMJ, hearing, the trial defense counsel moved to strike LTC S's testimony. The military judge denied the motion.

Appellant assigns the following error:

> The military judge erred when he allowed the battalion commander to testify as to the appellant's rehabilitative potential based solely on the offense involved and not on the appellant as an individual.

We agree that, under the circumstances of this case, it was prejudicial error to permit the testimony to stand before the members. The leading case on this question is *United States v. Horner*, 22 M.J. 294 (C.M.A.1986). In *Horner*, the Court approved the provision of Rule for Courts–Martial 1001(b)(5) permitting the government to solicit evidence of rehabilitative potential. Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 1001(b)(5) [hereinafter R.C.M.]. The Court further held that testimony should be based upon an assessment of an accused's character potential and not on the severity of the offense.

In the present case, the trial counsel's line of questioning was centered on appellant's offense and LTC S's replies emphasized that his opinion was based principally on the offense. The trial counsel's first substantiative question was:

> Q: A member of your command is being court-martialed, has pled guilty to the offense of carnal knowledge. Do you have an opinion as to his rehabilitative potential in the Army?
>
> DC: Objection, your honor. If we could have a basis for what he bases it on first.
>
> MJ: Lay the foundation.

Thereafter, it was established that the witness had little direct knowledge of the ap-

pellant's duty performance. Then the following colloquy occurred:

Q: So you're aware through conversations about the duty performance?

A: Yes.

Q: And you're aware of the offense?

A: Based upon the offense, do you have an opinion for his rehabilitative potential?

A: Yes.

DC: Objection.

MJ: Not just based upon the offense.

Trial counsel attempted rehabilitation of the witness. However, the witness continued to state unequivocally that it was the offense that mattered by such replies as: "I don't want the soldier who off duty commits that type of offense in the Army"; and "I don't want him representing the Army for me in my unit or the community." Then trial counsel asked:

Q: What if the entire chain of command came in here and said that he was the best soldier they ever saw?

A: Fine and good, but I don't want him representing the Army *based on the offense* or in the community.

(Emphasis added). Lieutenant Colonel S indicated in closing that he had taken everything into account in forming his opinion.

The defense cross-examination of LTC S was as follows:

Q: Colonel S, if I understand what you're saying, that even if he's the best soldier that ever was, that just because of the offense you would not want him in the Army.

A: Well, in fact in my mind he's not the best soldier that ever was. When you're on duty 24 hours a day and represent the Army, certainly your off duty conduct indicates what kind of soldier you are also. He's not the kind of soldier I want in the unit or in the Army.

Q: Just because of the offense.

A: Certainly.

Q: So if you were to take that one offense away, then your opinion might change.

A: It's irrelevant. He committed an offense.

Q: Right, I agree. I agree, and that's what he's here for. But my question is your opinion that he should not be in the Army, would not want him in your unit is based strictly upon this offense.

A: Based on the offense I do not want him in the unit representing the Army or in the community.

Lieutenant Colonel S thus clearly established on both direct and cross-examination that his opinion was based upon the offense.

Given the following: LTC S was a court-martial panel member who had previously sat with some of the members hearing the appellant's case; the extensive positive defense evidence of rehabilitative potential (LTC S was the only rebuttal witness); and that LTC S's opinion was clearly based upon the offense; we hold it was prejudicial error to deny the motion to strike. In this case, as in *Horner*, "[the battalion commander's] testimony was plainly based not upon any assessment of appellant's character and potential, but upon the commander's view of the severity of the offense. Such testimony is simply not helpful to the sentencing authority." *Horner* at 296. Unlike the *Horner* circumstances, we find there was prejudice to the appellant which would ordinarily require a rehearing on the sentence. However, since the appellant has served the confinement portion of his approved sentence, and in the interests of judicial economy, we will reassess and disapprove the bad conduct discharge. *See United States v. Sales*, 22 M.J. 305 (C.M.A.1986).

The findings of guilty are correct in law and fact and are affirmed. Only so much of the sentence as provides for confinement for three months, forfeiture of $447.00 pay per month for three months and reduction to the grade of Private E-1 is affirmed.

Chief Judge HOLDAWAY and Judge CARMICHAEL concur.